Roger Dale SIMS *v.* STATE of Arkansas

CA CR 86-46                                        716 S.W.2d 774

Court of Appeals of Arkansas
Division II
Opinion delivered October 1, 1986
[Rehearing denied November 5, 1986.]

*Richard B. Adkisson* and *John W. Achor*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

LAWSON CLONINGER, Judge. Appellant raises four points for reversal in this appeal from his conviction on a charge of second degree murder under Ark. Stat. Ann. § 41-1503 (Repl. 1977). We find error in one of the points and accordingly reverse and remand this matter to the lower court for a new trial.

Testimony at trial indicated that appellant, Roger Dale Sims, was returning to his home in Conway on February 22, 1985, after making a business trip to North Little Rock. He stopped at Kelly's Bar on the Morgan Interchange to invite the owner, Edna Hicks, to a barbeque. On entering the bar, appellant was approached by Charlie Parker, who began verbally abusing him, calling him a "punk" and threatening to beat him up.

Appellant testified that he had feared Parker since 1972 or 1973, and that Parker had made threats against his life since 1978 or 1979. He stated that he knew that Parker habitually carried a knife and was said to have carried a gun. Moreover, appellant recounted several instances of Parker's violent behavior of which he was aware, including stabbing a man in the throat, striking two men on the head with heavy objects and rendering them unconscious and, in the case of one, in need of hospitalization, and kicking a felled opponent in the mouth and rubbing his face on a concrete surface.

According to appellant, he left the bar, headed for his pickup truck, and then realized he had forgotten to invite Hicks to the cookout. Hicks testified that appellant had, in fact, invited her when he first came in to the bar. Appellant returned to the bar and

ordered a beer. Parker, who had gone outside at the same time, also reappeared. He once again approached appellant and renewed his vituperative attack.

At this point, it becomes unclear exactly what was said and what ensued. In appellant's version, Parker said to him, "It's pistola time, Dale," and then thrust his hand in his pocket and turned away. Appellant said that he drew his own gun, which he wore continually, because he feared Parker was preparing to attack him with a knife. He claimed that Edna Hicks grabbed him and his gun fired. Hicks, as well as another witness, denied that she touched appellant, although yet another witness supported appellant's account. In any event, a bullet struck Parker in the head, and he fell, mortally wounded. After a few moments, appellant left the bar. Parker died the next day.

The case was submitted to a jury on first and second degree murder and manslaughter charges. Appellant was convicted of the offense of second degree murder and was sentenced to fifteen years imprisonment. From that judgment, this appeal arises.

The point on which we reverse is appellant's second, in which he argues that the trial court erred in allowing the State to put on evidence in rebuttal that could have been submitted in the case in chief. The rebuttal witness, Alan Washam, was named on appellant's list of witnesses. The list was not made available to the State until the morning of the day of the trial. At the noon recess in the trial, the prosecutors interviewed some of the witnesses on the list, including Washam. When the trial resumed in the afternoon, the State concluded its case, calling two scientific witnesses and resting, "subject to rebuttal," without calling Washam.

When appellant testified, he was asked on cross-examination if, after Parker had fallen to the floor, he had advanced toward him pointing his gun and saying, "Crawl like a dog." Appellant stated that he had not. Defense counsel objected that evidence of such a statement was part of the res gestae and should have been presented as part of the State's case in chief but was purposely withheld to set up rebuttal evidence under the guise of testing appellant's credibility. An unfair advantage was thereby gained for the State, the defense contended, through varying the prescribed order of proof.

The trial court agreed that the evidence was available to the State before it rested, that it was indeed res gestae evidence, and that the State could have presented it in its case in chief. Nonetheless, the court held that it had discretion to admit such evidence in rebuttal and would do so under the circumstances. Later, the court allowed Washam to testify in rebuttal over defense objections, noting that the State had been unaware of the witness until noon. On the witness stand, Washam testified that appellant, after shooting Parker, had said something to the effect of "Crawl, you dog."

██ Ark. Stat. Ann. § 43-2114 (Repl. 1977) sets forth the limitations upon the offering of rebuttal evidence: "The parties may then [after the State's and the defendant's evidence have been offered as prescribed at Ark. Stat. Ann. §§ 43-2112, 2113 (Repl. 1977)] respectively offer rebutting evidence only, unless the court for good reason, in furtherance of justice, permit them to offer evidence upon their original case." The Arkansas Supreme Court has held that it is generally in the sound discretion of the trial court to allow rebuttal testimony which might have been properly introduced in the State's case in chief. *Birchett* v. *State*, 289 Ark. 16, 708 S.W.2d 625 (1986); *see also Kellensworth* v. *State*, 275 Ark. 252, 631 S.W.2d 1 (1982). Genuine rebuttal evidence, however, is not simply a reiteration of evidence in chief, but consists of evidence offered in reply to new matters. *Birchett, supra.*

In the *Birchett* case, the Arkansas Supreme Court ruled that a witness for the prosecution should not have been given rebuttal status by the trial court when she could have been presented during the State's case in chief. Moreover, her testimony impeached responses drawn from the defendant during his cross-examination by questions which seemed to the court "clearly designed to manufacture a rebuttal situation for a presentation of . . . evidence that was not genuinely in response to anything presented by appellant in his defense." *Id.*

As in the present case, the State contended in *Birchett* that it did not know about the rebuttal witness until the day of the trial. The Arkansas Supreme Court dismissed the matter as one of "no great importance," noting that, perhaps a month before the trial, the police had taken a statement from the witness, the knowledge

of which was imputed to the prosecutor's office. While the same circumstances do not obtain in the instant case, the fact that the prosecutors actually interviewed Washam before they had finished calling their witnesses is of considerable significance.

Appellee argues that, within its "proper context," the trial court's action in admitting the rebuttal witness's testimony was not an abuse of discretion. According to appellee's brief, Washam was unknown until the day of the trial, the State did not know what his testimony would be "until most of their witnesses had testified," and the prosecution "did not intentionally lay a trap for appellant." Appellee concedes that the State had not rested until after it interviewed Washam and appears to acknowledge that a trap, albeit an *unintentional* trap, had been laid for appellant in his cross-examination. It requires little imagination to gauge the impact upon a jury of the State's question on cross-examination and the subsequent introduction of the rebuttal witness's testimony.

■ The Supreme Court noted, in dicta, in *Birchett, supra,* that if the State had found itself unexpectedly with a witness for its case in chief *after* it had rested, the trial court could have granted a motion to reopen the State's case for the presentation of new evidence. Such circumstances were not present in either that case or this. Instead, in the instant case, the State had the opportunity, before it had completed its case in chief, to incorporate Washam's testimony into its trial strategy. The result of the State's tactics was to gain an unfair advantage over appellant and to prejudice his cause. The trial court in this instance abused its discretion in permitting the introduction of evidence that belonged properly in the State's case in chief.

The other issues raised by appellant are rendered moot by our decision. We address them, however, in the event that they should arise again.

■ In his first point for reversal, appellant argues that the court below erred in not allowing testimony by a police officer that he had searched Charlie Parker's vehicle in April, 1983, in connection with a DWI arrest and had found a revolver, which Parker later claimed at the sheriff's office as his own. He relies on *Britt* v. *State*, 7 Ark. App. 156, 645 S.W.2d 699 (1983), and attempts to distinguish *Halfacre* v. *State*, 277 Ark. 168, 639

S.W.2d 734 (1982), cases which stand for the proposition that evidence of specific bad acts of a victim directed at the defendant or within his knowledge before the commission of the crime is admissible as probative of what the defendant reasonably believed.

Here, however, as the trial court ruled, appellant did not know about the discovery of the gun in Parker's vehicle almost two years before the shooting. Evidence of bad acts not within a defendant's knowledge cannot reasonably be construed as probative of the defendant's belief. The trial court thus acted properly in refusing to admit the officer's testimony.

Appellant contends in his third point that the trial judge erred in refusing to give his requested instruction on accident. The requested instruction, however, relates to the issue of whether appellant had the requisite culpable mental state for the crimes charged. That mental state was defined in each of the charges: purposefully or premeditated and deliberated for murder in the first degree, Ark. Stat. Ann. § 41-1502(1) (Repl. 1977); knowingly for murder in the second degree, Ark. Stat. Ann. § 41-1503(1) (Repl. 1977); and recklessly for manslaughter, Ark. Stat. Ann. § 41-1504(1) (Repl. 1977). The trial court also gave the jury an instruction on self-defense.

■ Appellant's requested instruction embodied his theory of the case:

> If the defendant was justified in pulling his weapon, and having done so, the gun discharged accidentally, then the jury should find him not guilty.

In other words, according to appellant's premise, if a shooting is an accident then it is a defense to any charge. The concept of accident, however, in the sense of an unforeseen contingency (*see* the *Oxford English Dictionary*), naturally pertains to one's mental state. Appellant's argument that the shooting was accidental could have been, and was, addressed to each charge and its appropriately defined mental state. All requisite mental states were before the jury in proper instructions. Where the subject matter is fully covered by instructions already given, it is not error for the trial court to refuse a certain requested instruction. *Cobb v. State*, 265 Ark. 527, 579 S.W.2d 612 (1979).

Finally, appellant urges that the trial court erred in refusing to give an instruction on negligent homicide. Ark. Stat. Ann. § 41-1505(1) (Repl. 1977) provides: "A person commits negligent homicide if he negligently causes the death of another person." Appellant was found guilty of second degree murder. It is not error to refuse to give an instruction on one lesser included offense if other lesser offenses were covered by the instructions given and the jury returned a verdict for the greater offense. *Sherron* v. *State*, 285 Ark. 8, 684 S.W.2d 247 (1985).

Reversed and remanded.

MAYFIELD and CORBIN, JJ., agree.